IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 06-cv-00374-WYD

RONALD K. BASSETT,

      Applicant,

v.

R. WILEY, Warden,

      Respondent.

---

ORDER GRANTING HABEAS CORPUS APPLICATION IN PART

---

Applicant Ronald K. Bassett is in the custody of the United States Bureau of

Prisons (BOP) at the Federal Prison Camp at Florence, Colorado.  Mr. Bassett has filed

*pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1994).

He is challenging BOP regulations that prevent him from being placed in a community

corrections center (CCC) prior to the last ten percent of his sentence.  In an order filed

on April 13, 2006, I directed the respondent to show cause why the habeas corpus

application should not be granted.  On April 27, 2006, the respondent filed an answer

to the show cause order.  On May 15, 2006, Mr. Bassett filed a reply.  After reviewing

the entire file, I find that an evidentiary hearing is not necessary.  For the reasons

stated below, the habeas corpus application will be granted in part.

I.  Factual Background

The material facts in this action are not disputed.  Mr. Bassett was convicted in

2004 pursuant to a plea agreement in the United States District Court for the District of Utah on charges of obstructing and impeding a Securities and Exchange Commission proceeding.  He was sentenced to sixty months in prison and to three years of supervised release.  He also was ordered to pay $18,675,121.89 in restitution.  Mr. Bassett's projected release date is February 9, 2009.

As noted above, Mr. Bassett is challenging BOP regulations that prevent him from being placed in a CCC prior to the last ten percent of his sentence.  He asserts that the BOP has determined he is not eligible for such a placement until September 4, 2008.  He argues that the BOP should reconsider his eligibility for such placement, and requests his immediate transfer to a CCC.

II. <u>The Statutory and Regulatory Framework Governing CCC Placement</u>

The BOP regulations at issue are based on two statutes.  Pursuant to 18 U.S.C. § 3621(b), the BOP has the authority to designate the location of a federal prisoner's imprisonment.  The BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau."  18 U.S.C. § 3621(b).  In addition, at any time the BOP may "direct the transfer of a prisoner from one penal or correctional facility to another."  *Id.*  In making the initial placement designation and any transfer decisions, the BOP must consider these five factors:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

2

> (4) any statement by the court that imposed the sentence –
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*Id.*

The second relevant statute is 18 U.S.C. § 3624(c), which directs the BOP to prepare prisoners for re-entry into the community near the end of their sentences. This statute provides in relevant part as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP considered inmates for placement in a CCC for up to six months regardless of the length of their sentences. On December 13, 2002, the Office of Legal Counsel (OLC) for the Department of Justice issued a memorandum concluding that this practice was unlawful. The OLC memorandum determined that the BOP does not have general authority under § 3621(b) to place an inmate in a CCC at any time and that § 3624(c) limits placement in a CCC to the lesser of six months or ten percent of the inmate's sentence. On December 20, 2002, in order

3

to comply with the OLC memorandum, the BOP began limiting placements in a CCC to the lesser of ten percent of the total sentence or six months.

The December 2002 policy change was challenged, and two circuit courts, as well as a number of district courts, found the December 2002 policy contrary to the plain meaning of § 3621(b) because it did not recognize the BOP's discretion to transfer an inmate to a CCC at any time. *See Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004). These courts reasoned that the time constraints of § 3624(c) limited only the affirmative obligation of the BOP and not the BOP's discretion under § 3621(b) to place an inmate in a CCC for a longer period of time. *See Elwood*, 386 F.3d at 846-47; *Goldings*, 383 F.3d at 28-29.

In February 2005, in response to *Elwood* and *Goldings*, the BOP adopted new regulations governing the placement of inmates in CCCs. *See* 28 C.F.R. §§ 570.20, 570.21. The new regulations have the effect of imposing the same limitations on a prisoner's placement in a CCC. These regulations specifically provide as follows:

> **§ 570.20 What is the purpose of this subpart?**
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **§ 570.21 When will the Bureau designate inmates to**

4

> **community confinement?**
> (a) The Bureau will designate inmates to community
> confinement only as part of pre-release custody and
> programming, during the last ten percent of the prison
> sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific
> Bureau programs allow greater periods of community
> confinement, as provided by separate statutory authority (for
> example, residential substance abuse treatment program
> (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program
> (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20, 570.21.

### III.  Discussion

Mr. Bassett claims in the habeas corpus application that the BOP's February 2005 regulations codified at 28 C.F.R. §§ 570.20 and 570.21 are contrary to the clear intent of Congress and violate the Administrative Procedure Act.  Because I agree that the new regulations are contrary to the clear intent of Congress as set forth in § 3621(b), I need not reach the Administrative Procedure Act claim.

Respondent first argues that the habeas corpus application should be denied because Mr. Bassett failed to exhaust administrative remedies.  Although Mr. Bassett concedes that he has not exhausted administrative remedies, he contends that the exhaustion requirement should be excused because exhaustion of administrative remedies would be futile.

Exhaustion of administrative remedies is a prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241.  *See Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986).  One of the purposes of administrative exhaustion is to allow the agency an

opportunity to remedy its own mistakes before being haled into court and it applies with particular force when the challenged action involves an exercise of the agency's discretionary power. *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).  Therefore, exhaustion of administrative remedies would be futile and should be excused if the agency lacks authority to grant the requested relief or has predetermined the issue before it. *See id.* at 148.

In the instant action it is apparent that it would be futile for Mr. Bassett to exhaust administrative remedies because he is being denied a CCC placement prior to the last ten percent of his prison sentence based on formally adopted BOP regulations. Therefore, I will not deny the application for failure to exhaust administrative remedies.

The next question is whether the BOP's February 2005 regulations are a valid interpretation of § 3621(b) and § 3624(c).  To answer this question I first must determine if Congress has spoken directly to the precise question at issue in such a way that the intent of Congress is clear. *See Chevron v. Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 842 (1984).  If Congress has not spoken directly to the precise question at issue, such as when a statute is silent or ambiguous, I must determine whether the BOP's interpretation "is based on a permissible construction of the statute." *Id.* at 843.  In making this determination, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844.

Prisoners across the country have challenged the BOP's February 2005 regulations and the district courts have reached a variety of results.  At least two judges

in this district have issued rulings upholding the BOP's February 2005 regulations.  *See*

*Montoya v. Rios*, No. 05-cv-00606-PSF-PAC, 2005 WL 3271489 (D. Colo. Nov. 30,

2005); *Hurley v. Sherrod*, No. 05-cv-01177-LTB-PAC, 2005 WL 2141490 (D. Colo.

Sept. 1, 2005).  The only three circuit courts of appeals to have considered the issue all

have held that the BOP's February 2005 regulations are invalid.  *See Levine v. Apker*,

455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); *Woodall v.*

*Fed. Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005).  After careful consideration, I

agree with the logic, reasoning, and results reached in *Levine*, *Fults*, and *Woodall*, and

I find that the BOP's February 2005 regulations violate the clearly expressed intent of

Congress.

        The fundamental flaw with the BOP's February 2005 regulations is that the

regulations do not allow the BOP to consider all of the factors listed in § 3621(b) which,

pursuant to that statute, must be considered when the BOP initially designates an

inmate's place of confinement and when the BOP transfers an inmate to a new facility.

At least three of the five factors listed in § 3621(b) are specific to individual prisoners

and cannot be considered using a categorical approach.  The Third Circuit in *Woodall*

stated:

> The regulations do not allow the BOP to consider the nature
> and circumstances of an inmate's offense, his or her history
> and pertinent characteristics, or most importantly, any
> statement by the sentencing court concerning a placement
> recommendation and the purposes for the sentence.  And
> yet, according to the text and history of § 3621, these factors
> must be taken into account.  The regulations are invalid
> because the BOP may not categorically remove its ability to
> consider the explicit factors set forth by Congress in
> § 3621(b) for making placement and transfer determinations.

*Woodall*, 432 F.3d at 244; *see also Fults*, 442 F.3d at 1091-92; *Levine*, 455 F.3d at 85 ("The BOP is not empowered to implement selectively the instructions given by § 3621 (b), by picking and choosing those factors that it deems most compelling.").

Chief Judge Babcock and Judge Figa, in *Hurley* and *Montoya*, respectively, rely on the United States Supreme Court's decision in *Lopez v. Davis*, 531 U.S. 230 (2001), in finding that the BOP's February 2005 regulations are valid. I am not persuaded because I find that *Lopez* is distinguishable.

In *Lopez*, the Supreme Court upheld a BOP regulation that categorically excluded from consideration for early release a class of inmates that otherwise would have been eligible for early release under the terms of the governing statute. *See id.* at 238. The statute in question, 18 U.S.C. § 3621(e)(2)(B), provides that the BOP may grant a sentence reduction of up to one year to inmates convicted of nonviolent offenses who successfully complete a substance abuse treatment program. In order to implement § 3621(e)(2)(B), the BOP adopted a regulation categorically excluding from consideration for early release inmates convicted of nonviolent offenses involving firearms. *See* 28 C.F.R. § 550.58(a)(1)(vi)(B). The Supreme Court upheld the regulation because, "[b]eyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." *Lopez*, 531 U.S. at 242. Therefore, the Supreme Court's review was limited to whether the BOP reasonably filled the statutory gap. *Id.*

I find that *Lopez* is distinguishable from the instant action because the BOP's

February 2005 regulations do not fill a statutory gap in § 3621(b).  Instead, the BOP's

February 2005 regulations ignore the plain language of § 3621(b).  Congress

specifically listed five factors in § 3621(b) that the BOP must consider in making

placement decisions.  As noted above, three of the five factors specified in § 3621(b)

are not generally applicable and, thus, require individual determinations that could not

have been considered by the BOP in promulgating the February 2005 regulations.  *See*

*Fults*, 442 F.3d at 1092; *Woodall*, 432 F.3d at 248.  The BOP may not adopt regulations

that edit the statutes they purport to interpret.  *See Levine*, 455 F.3d at 85.

> Categorical rulemaking, like all forms of agency regulation,
> must be consistent with unambiguous Congressional
> instructions.  And, an agency may not promulgate
> categorical rules that do not take account of the categories
> that are made significant by Congress.  Though Congress
> left the BOP a large territory of discretion in implementing
> § 3621(b), it did not leave the BOP's duties undefined.  The
> BOP is not empowered to implement selectively the
> instructions given by § 3621(b), by picking and choosing
> those factors that it deems most compelling.

*Id.* (internal citation omitted).  As a result, I find that *Lopez* does not control the

disposition of this action.

Although the BOP raised other arguments in *Woodall*, *Fults*, and *Levine* to

support the categorical approach adopted in the February 2005 regulations, the

respondent in the instant action does not raise or address those arguments.

Nevertheless, I have considered those arguments and, for the same reasons set forth

in *Woodall*, *Fults*, and *Levine*, I agree that those arguments lack merit.  Therefore, I find

that the BOP's February 2005 regulations are contrary to the clear intent of Congress

9

in § 3621(b) and are invalid.  Accordingly, it is

      ORDERED that the application for a writ of habeas corpus under 28 U.S.C.

§ 2241 is GRANTED in part.  It is

      FURTHER ORDERED that the respondent reconsider Applicant Ronald K.

Bassett for placement in a community corrections center without regard to 28 C.F.R.

§§ 570.20 and 570.21.  Mr. Bassett's request for immediate transfer to a community

corrections center is denied.

      Dated:  September 25, 2006

                         BY THE COURT:


                         s/ Wiley Y. Daniel
                         Wiley Y. Daniel
                         U. S. District Judge